## Cole v. Commonwealth.

(Decided December 11, 1928.)

### Appeal from Greenup Circuit Court.

1. Banks and Banking.—In prosecution of bank cashier for knowingly assenting to receiving of deposit by bank at time when bank was insolvent, commonwealth to convict must prove that bank was insolvent on date deposit was made and that defendant then had knowledge of its insolvency.

2. Criminal Law.—In prosecution of bank cashier for knowingly assenting to receiving of deposit by bank at time when bank was insolvent, witness' testimony as to what was said to him by third party relative to another bank was hearsay, so that it and further statement based thereon relative to insolvency of defendant's bank were incompetent.

3. Banks and Banking.—In prosecution of bank cashier for knowingly assenting to receiving of deposit by bank at time when bank was insolvent, evidence of financial condition of debtor bank is admissible in determining solvency of defendant's bank.

4. Banks and Banking.—In prosecution of bank cashier for knowingly assenting to receiving deposit at time when bank was insolvent, in which commonwealth was required to show that defendant knew of insolvency of debtor bank, evidence held insufficient on such issue to take case to jury, nothwithstanding that defendant's brothers were connected with debtor bank.

5. Banks and Banking.—In prosecution of bank cashier for knowingly assenting to receiving of deposit when bank was insolvent, evidence relative to accommodation paper which did not weaken bank, in view of maker's solvency, held inadmissible as tending to divert jury's minds from real issue, but defendant's diversion of funds of bank to insolvent parties would be admissible.

6. Banks and Banking.—In prosecution of bank cashier for knowingly assenting to receipt of deposit at time when bank was insolvent, defendant may introduce evidence as to execution of accommoda-

tion notes to explain course of conduct, if commonwealth shows that defendant diverted funds of bank to insolvent parties.

JOHN F. COLDIRON, WAUGH & HOWERTON and O. R. BRIGHT for appellant.

THOS. E. NICKEL, Commonwealth Attorney, J. W. CAMMACK, Attorney General, JAS. M. GILBERT, Assistant Attorney General, and A. FLOYD BYRD for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS— Reversing.

Charged with the crime of knowingly assenting to the receiving of a deposit by the Citizens' State Bank of Greenup, while he was its cashier, and at a time when that bank was insolvent, W. T. Cole was convicted and sentenced to the penitentiary for one year. He appeals.

Defendant became cashier of the bank in 1909. It had a capital stock of $15,000 and a surplus of $1,500. Only two dividends were declared during the ensuing 17 years. The bank in a way was run as a family affair. Defendant's son was assistant cashier, and his brother was its president during the year 1926. Defendant and his wife owed it debts of $5,000 each secured by mortgage. His brother A. D. Cole owed it $5,000, and other members of his family and relations owed $3,000 or more. Defendant needed more money, and as he could not legally incur a greater indebtedness at the bank, he induced various friends from time to time to execute their several notes to the bank and give them to him in exchange for his notes for like amount, payable to the individual making the exchange, with the understanding that he would negotiate the one received by him at the bank for his own benefit. In this way the bank made loans aggregating $14,000 or $15,000. In this record these obligations are styled "accommodation notes." The state bank examiners discovered this practice in October, 1926, and expressed their dissatisfaction with it and suggested a change in the management and an audit of the books, and at the bank's instance employed an expert accountant to make an audit, and this was completed about January 1, 1927. Presumably nothing improper or irregular was disclosed by that audit, as the accountant did not testify and no reference is made to his report. Early in January, 1927, the banking commissioner and deputy state bank examiner spent several days in an effort to

straighten out the affairs of the bank, and the former continued to insist on a change in the management; perhaps suggested that it was well to have the various obligees on the "accommodation notes" to make a statement touching those obligations. The defendant went to see the parties, and several of them testify that he requested them to make an affidavit that they had received the proceeds of the notes, while he testifies that he merely asked them to certify an acknowledgment of their several obligations, and all admit that he was then asserting that the bank was solvent. One of these, Hugh Boggs, made a deposit of $1,050 on January 5th, which was received by defendant's son as cashier, and which forms the basis of this prosecution. On January 10th, an effort was made to get the First National Bank of Greenup to take over the business. The bank was favorably inclined, and it is testified that it expressed its willingness to take $66,000 of the paper at $58,000 cash, leaving the banking house, fixtures, and $11,000 in notes undisposed of. But as some of the mortgage collateral did not mature for three years it doubted its authority to receive this under the National Banking Act, and did not accept the proposition. Thereupon, on motion of A. D. Cole, the officers of the bank agreed to a voluntary liquidation under the state banking department. On January 11th the bank was closed. A. V. Pollack was appointed special banking commissioner for the purpose of liquidation. At that time the total deposits owing by the bank approximated $115,000, and its assets, book value, $137,000. The latter consisted of cash on hand, due from other banks and Liberty bonds, $52,973.02; loans and discounts, $79,-412.28; bank building and fixtures, $4,402.50; "cash items" and overdrafts, $565.99. Of the amount due from banks, $43,236.38 was deposited in the Farmers' & Traders' Bank at Maysville. The defendant's brother, H. W. Cole, was vice president and A. D. Cole, another brother, was a director of that bank. Soon after the closing of the Citizens' Bank and the demand of its deposit, the Maysville Bank was also forced into liquidation. The indictment of defendant followed.

Supplementing the above facts the state banking commissioner, Mr. Phillips, testified that he was unable to tell from his examination whether the Greenup Bank was insolvent at the time it went into liquidation. He also testifies that he had expressed dissatisfaction with

the management of the Maysville bank, and that it was possibly insolvent. H. H. Shanks, the bank examiner who conducted the examination, was not introduced by the commonwealth, but an affidavit was read by defendant as his deposition, in which he stated that in going over the assets and liabilities of the bank, and after making a careful examination, the department was of the opinion that—

> "They (referring to the banking department) decided that while the bank needed a change in the personnel that the same was solvent and recommended to the officers of the bank that with a change of personnel they could go on operating the bank with the same assets under the same conditions that it was then operating . . . and that the bank was put in the process of liquidation upon the suggestion of the president and other officers of the bank, and was not closed by the state banking commissioner or put in their hands arbitrarily but upon the above suggestion."

Mr. Pollack, the special commissioner in charge of the liquidation, testified that during his 12 months' tenure he had paid the depositors two dividends amounting to 40 per cent. of their claims, and had $10,000 in cash on hand for distribution; he had mailed notices to the various debtors of the bank, but did not undertake to go into details as to the value of the assets remaining on hand. He, however, did testify that he had been informed by the state banking department that it was probable the bank of Maysville would pay 60 per cent. of its liabilities, and based on this hypothesis he thought the depositors of the Greenup bank would receive about 85 per cent. of their claims. The various makers of the "accommodation notes" were permitted to testify at length as to the transactions in which those notes were executed, as well as to the defendant's request for an affidavit admitting their liability thereon. One of these testified that the defendant was very much excited at the time he did this; that he then said the examiners were reflecting on his honor, and threatened to procure a pistol and shoot them, which witness dissuaded him from doing.

The defendant testified that he considered the bank solvent at the time he received the deposits, and still be-

lieved it to be so. He explained the transactions with the various makers of the accommodation paper by saying that they were all his friends; that he had explained to each of them his need of money; and that in each instance the obligor fully understood the obligation he was incurring and accepted defendant's note in lieu thereof. In visiting them at the time of the examination, he understood the bank examiners to claim the accommodation notes were not genuine, and merely undertook to show they were bona fide. The makers of the notes were solvent, and the bank was in no wise injured by these transactions. In the latter respect he is not contradicted except by two parties. One of these, T. H. Fitzpatrick, who executed two notes, says he had no property, and says he informed defendant executing the note that he had made his property over to his wife. Defendant denies having heard this statement. Defendant's son testifies that he was assistant cashier; that the bank was amply solvent. He admits on cross-examination that on the 10th of January, 1927, the day before the banking department took charge of the bank, he as treasurer of the city of Greenup transferred his account from it to the Maysville bank, but says that at that time liquidation had been determined upon and he knew it would delay the payment of checks, and transferred his account for that reason and not through any fear of the insolvency of the institution.

Defendant's official connection with the bank, and the fact that the deposit was made on the 5th day of January, 1927, are not disputed, and his assent thereto will be presumed. But in order to sustain a conviction it was further necessary for the commonwealth to prove by satisfactory evidence that the bank was insolvent on that date; and that defendant then had knowledge of its insolvency. Considering the record in its entirety, the only direct evidence touching the insolvency of the bank is that of Mr. Pollack, who thinks 85 per cent. of the deposits will be paid, on the hypothesis that the Farmers' Bank of Maysville pays 60 per cent. of its indebtedness; the latter hypothesis being based on the statement that some one connected with the state banking department estimated that such dividends will be paid. Assuming the competency of this evidence, if the loss through the Maysville bank is proper to be considered on this trial, and further assuming that Mr. Pollack is in a position

to ascertain what may be realized from the assets in his hands by prudent and careful management, it would appear that the Greenup bank is now in fact insolvent. And in the absence of evidence showing marked shrinkage in property values due to a falling market, or something of a similar nature, such evidence might be sufficient to show insolvency at the time the Boggs deposit was made. But Mr. Pollack's testimony as to what was said to him by a third party in reference to the Maysville bank is hearsay, and therefore such evidence, as well as Pollack's further statement based thereon, is incompetent, and its admission erroneous and prejudicial. However, as a debtor of the Citizens' Bank evidence of the actual financial condition of the former bank is admissible in order to determine the solvency of the latter, if offered by a witness who knows the facts, and perhaps this may be introduced on another trial.

It is insisted, however, that appellant was entitled to a directed verdict in his favor. As the incompetent evidence above alluded to may be rendered competent on another trial, we may so treat it and assume, in the consideration of this question, that the Maysville bank will only pay 60 per cent., and that therefore there is sufficient evidence to submit to the jury the issue as to the solvency of the Greenup bank on the date charged in the indictment. But this is not sufficient. The commonwealth must go further and show the defendant had knowledge of its insolvency. Pollack's statement is, if the Maysville bank pays a 60 per cent. dividend, the local bank will pay 85 per cent.; and as the deposits are $115,000 and the Maysville bank's indebtedness $43,296, a simple calculation will show that 40 per cent. of the latter is equal to 15 per cent. of the former, or that the solvency of the former bank would insure the solvency of the latter. And when placed on the narrow ground offered by the commonwealth, it must also show that the defendant knew of the insolvency of the Maysville bank in order to show that he knew of the insolvency of his own bank. As to this the evidence shows that the deposits in the Maysville bank were made in the regular course of business. There is no evidence that the defendant knew of any weakness in the Maysville bank, or that there was anything to put him on inquiry as to its condition; the sole basis of the assumption being the fact that his brothers were connected with that institution, and a suspicious inference

drawn from this relationship. This did not constitute a scintilla of evidence on this point or authorize a submission of the case to the jury, even conceding the full competency of the Pollack evidence. To uphold a felony, conviction on such a ground would render it hazardous for a fiduciary to transact any business with an institution conducted by a near relative.

Defendant also objected to all the evidence relative to the accommodation paper. That evidence indicates that defendant was in financial stress and making desperate efforts to borrow money. He had reached the limit of his credit at the bank and sought aid from his friends. His conduct in this respect is not to be commended, though it is not necessary for us now to say whether or not it was criminal. But be that as it may, at that time the bank had an ample reserve and was in a position to make loans. It also appears that with two exceptions the parties who executed the notes are solvent, and that the amount of these exceptions would be about $2,000. Aside from those instances, the bank was not weakened by these loans, and evidence of such loans to solvent parties did not throw any light upon the bank's solvency, but tended to divert the minds of the jury from the real issue they were trying, and is to be distinguished from the line of evidence admitted in Parrish v. Com., 136 Ky. 77, 123 S. W. 339. On another trial evidence of solvent loans will not be admitted over defendant's objection.

Conversely, if defendant diverted the funds of the bank to insolvent parties, this would affect its solvency and illustrate his intimate knowledge of its affairs, and evidence of such transaction is admissible, even if it be assumed that this constituted another offense. Cf. Parrish case, supra. Though, if so introduced by the commonwealth, the defendant would be authorized to introduce evidence as to the execution of the other accommodation notes in explanation of his course of conduct.

It is strongly argued that the conduct of defendant's son in removing his fiducial deposit from the bank on the day before it closed is evidence of defendant's guilt. The young man's explanation of this is given above. This may or may not be entirely satisfactory, but if he feared the solvency of the Greenup bank, he must have trusted the Maysville bank, and in either aspect it is insufficient

to show that his father considered his bank insolvent at that time.

Other questions are raised, but only those discussed are considered.

It follows that the trial court erred in not giving a peremptory instruction to find the defendant not guilty, and this will be done on another trial if the evidence is substantially the same.

Wherefore judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court, except Judge Willis, sitting.